UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RYAN ANTHONY HOLL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:18CV2-PPS/MGG |
| v. | ) |
| | ) |
| OTIS R. BOWEN CENTER FOR HUMAN | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Ryan Holl, who is proceeding in this matter *pro se*, filed this action after he was psychologically evaluated and subsequently detained at the Bowen Center in Plymouth, Indiana. He alleges that the defendant Bowen Center violated his rights under the federal constitution, Indiana state constitution, Indiana state law, and international human rights laws. The Bowen Center moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim. For the reasons that follow, I will grant the defendants' motions, but I will afford Holl an opportunity to amend his complaint.

**Background**

I take these facts from Holl's complaint, though his allegations are difficult to decipher. From what I can tell, on July 28, 2017, Holl agreed to allow a nurse named Ann Bates, who was employed by the Bowen Center in Plymouth, Indiana, to conduct a psychiatric evaluation of him. [DE 1 at 6-7 ¶12.] By Holl's own admissions, he engaged

in what many would consider erratic behavior. For example, he "decided to sit on the floor" for the evaluation, and he "drew illustrations in his journal and stated he was considering calling down the wrath of God on United States hospitals because too many people die from going to the hospital." [*Id.*] When Nurse Bates asked Holl to recall "3 words for five minutes," Holl "assumed she was trying to hypnotize him and decided to terminate the exam." [*Id.* at 7 ¶13.]

Holl alleges that Nurse Bates' evaluation indicated that he had "an irrational thought process, rapid pressured speech and defied redirection." [*Id.*] Nurse Bates' evaluation also apparently observed that he was paranoid and that "his mood was liable and his affect is bizarre." [*Id.*] Holl acknowledges that he admitted to Nurse Bates that he has paranoid and stated that he "has conversations with God and the devil, commonly known as prayer." [*Id.*] Ultimately, Nurse Bates concluded that Holl suffered from "Delusional disorders F22," and the staff at the Bowen Center notified Holl's father that he should be taken to the nearest emergency room for evaluation and hospitalization. The staff also stated that, if needed, police should be called to assist in transporting Holl to the emergency room. Holl claims that he was never informed of this information or provided with a copy of his diagnosis. [*Id.* at 7 ¶15.] It's not clear to me from Holl's complaint what ever came from this diagnosis and recommendation, including whether Holl was hospitalized at this time.

About a month later, on August 29, 2017, Holl, after promising a family member that he would submit to another psychological examination and "take it seriously,"

called the Bowen Center and requested another appointment with Nurse Bates. [*Id.* at 8 ¶16.] Holl reported to the Bowen Center on September 1, 2017, in order to undergo a second psychological evaluation. [*Id.* at 8-9 ¶19.] The details that Holl provides concerning this evaluation are odd. He apparently became dissatisfied with Nurse Bates – believing that she was not qualified to perform a psychological evaluation – and so he ended the meeting "giving her a dollar bill as a tip, and explaining to her I had to go take care of a coconut for my mother...." [*Id.* at 10 ¶21.]

According to Holl, a doctor named Santosh Maharjan signed a "Physician's Emergency Statement" that morning, while Holl was still undergoing the evaluation by Nurse Bates. The details of this process are not clear to me, but it appears that Nurse Bates described Holl as a potential danger, that his psychosis caused his behavior to be unpredictable, and that he lacked judgment to care for his own health. [*Id.* at 11 ¶25.] As a result, from what I can glean from Holl's complaint, he appears to have been detained at the Bowen Center after a judge issued an order pursuant to Indiana Code 12-26-5-1. This section of the Indiana Code provides that mentally ill, dangerous individuals may be detained in a facility for not more than 72 hours if certain conditions are met. In any event, Holl "viciously disputes he was psychotic." [*Id.* at 10 ¶24.]

What Holl describes next is a meeting with Detective Magnus and Officer Weir of the Plymouth Police Department, but again I'm not sure where this fits into the story. Holl doesn't tell me what role these officers played in the underlying events, though I surmise that they are the officers who transported Holl to the Bowen Center. It appears

that they must have detained him, since Holl alleges that the officers "didn't provide me with the legal paper showing me he had the right to detain me" and that Holl was handcuffed. [*Id.* at 11-13 ¶¶28-30.] Holl also alleges that another officer, Patrolman Giodano of the Marshall County Sheriff Department, arrived later. This officer appears to have had some role in Holl's detention and transportation to the hospital, as Holl alleges that Officer Giodano wouldn't provide him with "the legal document ... on the car ride down when I had my hands cuffed behind my back." [*Id.* at 13 ¶30.] Holl also says that Officer Giodano told Holl to "stop resisting" when he removed Holl's handcuffs at the hospital. [*Id.*] During this encounter, Holl was not read his Miranda rights and was not allowed to speak to an attorney. [*Id.* at 20 ¶54.]

Following Holl's transportation, it seems that Holl was detained at the Bowen Center. He claims that he was not allowed to contest his diagnosis and that he was not even informed of his diagnosis before being "locked up and thrown into a hospital." [*Id.* at 13 ¶32.] At the Bowen Center, Holl says that he requested his lawyer and access to a doctor, but his requests were denied. [*Id.* at 13 ¶33.]

Ultimately he was detained for "an entire week." [*Id.* 14 ¶35.] He was also informed that the hospital would provide the paperwork to get a court date scheduled, but that he could not schedule one over the phone and could not speak with Judge Palmer. [*Id.* 14 ¶34.] Judge Palmer is the judge who signed an order of detention for Holl after Nurse Bates found that he was a danger.

While he was detained, Holl alleges that staff at the Bowen Center held him down against his will and placed two pills in his mouth. [*Id.* at 18 ¶49.] He was forced to swallow the drugs. [*Id.* at 21 ¶¶55-58.] He was also forcefully injected with drugs without his consent. [*Id.* at 20 ¶54.] Holl also repeatedly asked to speak with a lawyer and to get access to a court in order to have an emergency hearing. These requests were denied. [*Id.* at 19 ¶50.] He was further coerced into signing a voluntary committal order. [*Id.* at 20 ¶54.]

Holl, who is proceeding in this matter *pro se*, filed a complaint against the Bowen Center,[1] alleging that these events violated a multitude of constitutional provisions, human rights law, and state law. The Bowen Center moved to dismiss Holl's complaint on two bases: lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. Holl filed a response to the Bowen Center's motion to dismiss but did not address any of the arguments made by the Bowen Center. Instead, his response, which is replete with profane, offensive language, is completely nonsensical.

**Analysis**

Federal Rule of Civil Procedure 12(b)(1) provides for a dismissal of an action for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). On a Rule 12(b)(1) motion, the plaintiff bears the burden of persuading the court that subject-matter jurisdiction

---

[1] It also appears that Holl has brought the exact same claims against three other defendants, the State of Indiana, the City of Plymouth, and Marshall County, in a separate lawsuit. *See Holl v. Indiana, et al.*, No. 3:18-cv-1 (N.D. Ind. Filed Jan 3, 2018). I'm not sure why these cases were not filed together, but that is an issue I will take up at a later time.

exists. *Kontos v. U.S. Dept. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). When a party moves for dismissal under Rule 12(b)(1) challenging the factual basis for jurisdiction, the nonmoving party must support its allegations with competent proof of jurisdictional facts. *Id.*

In reviewing a motion under Rule 12(b)(6), I "'must accept as true all of the allegations contained in a complaint' that are not legal conclusions." *Toulon v. Continental Casualty Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint must be construed in the light most favorable to Holl, and all possible inferences must be drawn in his favor. *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012). "To survive a motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Boucher v. Finance Sys. of Green Bay, Inc.*, 880 F.3d 362, 365-66 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Plausibility" does not require "probability," but "more than a sheer possibility that a defendant has acted unlawfully" is required to survive a challenge under Rule 12(b)(6). *Id.*

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

Holl claims that the Bowen Center violated his rights under the federal constitution. Holl is therefore raising a claim under 42 U.S.C. § 1983. Section 1983 provides a private right of action for violations of the federal constitution by persons acting under color of state law. In order to state a claim for relief under Section 1983, a plaintiff must allege two things: first, that he was deprived of a right under the Constitution or the laws of the United States; and second, that the deprivation was caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

Here, although Holl has properly alleged a deprivation of a right under the Constitution, he has not included any allegation that the deprivation was caused by a person acting under color of state law. There is no allegation that the Bowen Center is a state actor. To the contrary, it appears that the Bowen Center is a private corporation. There may be instances in which a private corporation can be said to be acting under color of state law. *Cf. Shields v. Ill. Dept. of Corrs.*, 746 F.3d 782, 789-90 (7th Cir. 2014). But here, there is no allegation that the Bowen Center's act of detaining Holl transformed its actions into those akin to a state actor. Indeed, the Seventh Circuit has held that initiating and pursuing detention and commitment proceeds does not turn a private actor into a state one for purposes of Section 1983. *Spencer v. Lee*, 864 F.2d 1376, 1377 (7th Cir. 1989) (considering this question in the context of Illinois law). As a result, Holl has failed to state a claim under Section 1983 against the Bowen Center.

Holl also brought a claim for damages for alleged violations of the Indiana constitution. Several states, and the federal government through Section 1983, have enacted statutes creating or regulating claims for damages for state constitutional violations. "Indiana, however, has no statutory provision comparable to 42 U.S.C. section 1983 creating an explicit civil remedy for constitutional violations by either individual officers or governmental entities." *Cantrell v. Morris*, 849 N.E.2d 488, 493 (Ind. 2006). And both Indiana and federal courts have declined to find an implied right of action for damages under the Indiana constitution. *Smith v. Ind. Dept. of Corr.*, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007). Because a federal district court charged with applying existing Indiana law is not the proper forum to undertake such a dramatic change in Indiana law, *see, e.g., Estate of O'Bryan v. Town of Sellersburg*, 2004 WL 1234215, at *21 (S.D. Ind. May 20, 2004), I too decline to imply such a cause of action. Therefore, Holl's claims for damages under the Indiana constitution must be dismissed.

Holl also seeks relief from the Bowen Center under various provisions of international law. First, Holl's complaint references the Third Geneva Convention and its provisions relating to the treatment of prisoners of war, as well as persons no longer taking active part in hostilities. He cites Article 3, which provides that these persons shall be "treated humanely" and to several other provisions. 6 U.S.T. 3316.

The Third Geneva Convention, by its own terms, applies to "all cases of declared war or of any other armed conflict which may arise between two or more of the High Contracting Parties, even if the state of war is not recognized by one of them." *Id.,* art.

2. The Bowen Center is not a High Contracting Party because it is not a signatory to the treaty. There also is no "declared war" or "armed conflict" at issue here. Simply put, the Geneva Convention has no applicability in this case.

Holl next cites the United Nations General Assembly's Universal Declaration of Human Rights, G.A. Res. 217A(111). However, Holl cannot state a claim under the Universal Declaration of Human Rights because it is a non-binding declaration that provides no private right of action. It is simply a statement of principles and not a treaty or international agreement that would impose legal obligations. *Konar v. Illinois*, 327 F. App'x 638, 640 (7th Cir. 2009) (citing *Sosa v. Avarez-Machain*, 542 U.S. 692, 734 (2004)).

Holl also claims that the Bowen Center violated his privacy. He appears to be raising a claim under the Health Insurance Portability and Accountability Act ("HIPAA"). Holl alleges that a July 28, 2017 "Psychiatrist/APN Assessment" states "staff notified Ryan's father that Ryan should be taken to the nearest emergency room for evaluation and hospitalization and if need be the police should be called to assist in transporting him to the emergency room for hospitalization." [DE 1 at 26 ¶83.] He also claims that it took the Bowen Center two months to provide Holl with his medical records after he requested them and that Bowen Center failed to release his medical records to his outpatient provider when requested. [*Id.*]

Holl's claim that these acts violated HIPAA must be dismissed because HIPAA does not provide a private right of action. *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011). "HIPAA provides civil and criminal penalties for improper disclosures of

medical information, but it does not create a private cause of action, leaving enforcement to the Department of Health and Human Services alone." *Doe v. Bd. of Tr. of the Univ. Of Ill.*, 429 F. Supp. 2d 930, 944 (N.D. Ill. 2006); *see also Haywood v. Novartis Pharm. Corp.*, 298 F. Supp. 3d 1180, 1190-91 (N.D. Ind. 2018).

Holl's complaint could also be plausibly read to allege the tort of invasion of privacy. The general tort of invasion of privacy includes four distinct injuries: (1) intrusion upon seclusion, (2) appropriation of likeness, (3) public disclosure of private facts, and (4) false-light publicity. *J.H. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 19 N.E.3d 811, 815 (Ind. Ct. App. 2014). As the Bowen Center observes, Holl's allegations most closely resemble public disclose of private facts.[2] This occurs when a person gives "publicity" to a matter that concerns the "private life" of another, a matter that would be "highly offensive" to a reasonable person and that is not of legitimate public concern. *Id.*; Restatement (Second) of Torts § 652D.

A plurality of the Indiana Supreme Court has expressed concern over the constitutionality of the tort because it "serves as an alternative for truthful defamation," which is forbidden by the Indiana Bill of Rights. *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 684, 691 (Ind. 1997). Indeed, Indiana courts have several times rejected recognizing the tort, and the Indiana Supreme Court "has acted as if public disclosure of private facts is not a valid cause of action in Indiana, even though a majority of the court has not so

---

[2]I do not discern any other privacy-related tort in Holl's complaint, and so I will not address them here, but Holl is free to allege other torts when amending his complaint.

10

held." *See Robbins v. Tr. of Ind. Univ.*, 45 N.E.3d 1, 13 (Ind. Ct. App. 2015) (Crone, J., concurring in part and in result). Putting aside the question of whether Indiana courts would even recognize public disclosure of private facts, I agree with the Bowen Center that Holl has not sufficiently stated a claim. Indiana courts have repeatedly held that communication to a single person or a small group of persons is not actionable because the publicity element requires communication to the public at large or to so many persons that the matter is substantially certain to become one of public knowledge. *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 966 (Ind. Ct. App. 2001).

Here, Holl has not alleged that private facts were communicated to the public at large or in a way suggesting that they were substantially certain to become public knowledge. To the contrary, he has alleged that private facts were disclosed to only one person – his father. Holl also includes various facts about how the door was left open during his evaluation, but this also is not sufficient to constitute publicity. Thus, this claim must be dismissed.

Finally, Holl alleges facts suggesting he is intending to bring state law claims for medical malpractice and libel, false imprisonment, and assault. Under the Indiana Medical Malpractice Act, "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel ... and (2) an opinion is given by the panel." Ind. Code § 34-18-8-4. This requirement applies in federal diversity malpractice claims. *Hines v. Elkhart Gen. Hosp.*, 465 F. Supp. 421, 423-25 (N.D. Ind. 1979); *see also Smith v.*

*Indiana*, 904 F. Supp. 877, 879-80 (N.D. Ind. 1995) ("Clearly ... where a *diversity* action involving state-created substantive rights is brought in a federal district court in Indiana, the provisions of the Act are applicable since the district court in that situation sits as a court of that state."). So, although there is no requirement that Holl file a complaint before he can bring his federal claims, he must do so before he can bring his medical malpractice claim – a state claim which invokes this Court's diversity jurisdiction.

Holl challenges the decisions made by various health professionals at the Bowen Center. The complaint contains a long list of objectionable decisions – among them are Nurse Bates' medical judgment and diagnosis, forced medication, the denial of access to medical records, and the denial of his possessions while he was committed. Under the Act, "health care" is "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind. Code § 34-18-2-13.

Although Holl has identified several of the acts performed by professionals at the Bowen Center as intentional torts, merely labeling acts performed by a health care provider as intentional torts does not automatically shield a plaintiff's claim from the procedural mandates of the Act. *M.V. v. Charter Terre Haute Behavioral Health Sys., Inc.*, 712 N.E.2d 1064, 1066 (Ind. App. Ct. 1999); *see also Boruff v. Jesseph*, 576 N.E.2d 1297, 1298 (Ind. Ct. App. 1991) ("[M]ere use of the word battery" is not necessarily sufficient to "escape the requirements of the Act."). All of the acts performed at the Bowen Center –

the diagnosis that Holl is dangerous, his forced medication, the denial of his possessions, and his detention – are professional judgments made by health care providers in psychiatric facilities. *See M.V.*, 712 N.E.2d at 1066. They are thus within the Act's purview.

Holl doesn't challenge the applicability of the Act to the Bowen Center. He also doesn't contradict the Bowen Center's argument that he was required to submit his complaint of malpractice to the state review panel, nor does he dispute that he didn't file one. Instead he appears to be effectively conceding that he didn't do this and that he was required to. In a recent filing, Holl submitted what he calls "Holl Formal Complaint at State Review Panel Per IC 34-18-8-4." [DE 14.] Attached is a copy of a complaint he purportedly just filed with the state review panel. This attempt to overcome his failure to exhaust his administrative remedies falls short, however, because the statute also requires that the state review panel have issued its opinion. Ind. Code § 34-18-8-4.

The Act "grants subject-matter jurisdiction over medical malpractice actions first to the medical review panel, and then to the trial court." *Putnam Cty. Hosp. v. Sells*, 619 N.E.2d 968, 970 (Ind. Ct. App. 1993). Because Holl did not first present his medical malpractice claim to the medical review panel, and the panel has not yet issued an opinion, a trial court in Indiana would be without subject-matter jurisdiction to adjudicate Holl's malpractice claim. *See M.V.*, 712 N.E.2d at 1067.

At least one court in this district has held, however, that because the "Indiana General Assembly doesn't decide the jurisdiction of the federal courts," the "legislative prohibition on court action doesn't affect this court's subject-matter jurisdiction." *Estate of Rice ex rel. Rice v. Corr. Med. Servs.*, 596 F. Supp. 2d 1208, 1225 (N.D. Ind. 2009). Accordingly, the court in that case dismissed the complaint on the basis that it failed to state a claim upon which relief could be granted under Indiana law, not on the grounds that it lacked subject-matter jurisdiction. *Id.* I will do the same and dismiss this count because it fails to state a claim.

Holl also cites to Indiana Code § 12-26-5-1, which sets forth requirements for involuntarily committing a person to a facility. This provision allows an individual to be detained in a facility for not more than 72 hours if a written application for detention is filed with the facility. An application must contain a statement of the applicant's belief that the individual is mentally ill and either dangerous or gravely disabled, and in need of immediate restraint. Ind. Code § 12-26-5-1(b). Holl claims that the Bowen Center did not follow the statute's requirements in two respects: it did not make a report upon Holl's request, and the detention order did not provide a statement that Holl was dangerous or gravely disabled. However, the statute does not require the Bowen Center to provide a report to Holl upon his request.

With respect to his second argument, the Bowen Center has submitted the emergency detention application used to involuntarily commit Holl. This application, the authenticity of which Holl does not challenge, is referenced in Holl's pleadings and

is central to his claims. [*See* DE 1 at 33 ¶¶109, 110.] I therefore can consider this document without converting the defendant's motion into one for summary judgment. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The application dated September 1, 2017 is signed by Nurse Bates and clearly states that "As a result of the mental illness, Applicant believes that this person is dangerous to themselves and/or to others, or is gravely disabled. Applicant believes that the person named as 'Person to be Detained' must be restrained immediately..." [DE 10-1 at 6.] Dr. Santosh Mahayar also signed a similar statement on the same date. [*Id.* at 7.] The application clearly contained the information Holl says was omitted. Therefore, there is no violation of Indiana Code § 12-26-5-1 on the bases that Holl claims.

Although I must dismiss Holl's claims, I will do so without prejudice and will afford him an opportunity to amend his complaint. Holl may file a motion seeking leave to amend his complaint within 30 days of this Opinion. He must file as an attachment to his motion a proposed amended complaint.

**Conclusion**

Based on the foregoing, the Defendant Otis. R. Bowen Center for Human Services, Inc.'s Motion to Dismiss [DE 9] is GRANTED. Plaintiff Ryan Holl's claims are DISMISSED WITHOUT PREJUDICE.

Plaintiff Ryan Holl is AFFORDED 30 days to seek leave to file an amended complaint, along with a proposed amended complaint that addresses the deficiencies identified in this Opinion. Holl is CAUTIONED that if he does not file a motion for

leave to amend with a copy of the proposed amended complaint with 30 days of this Opinion, all of his claims will be dismissed with prejudice.

**SO ORDERED**.

ENTERED: July 12, 2018.

                                                                      s/ Philip P. Simon_____
                                                                      **PHILIP P. SIMON, JUDGE**
                                                                       **UNITED STATES DISTRICT COURT**